# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| CANAL INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| CHRISTOPHER THOMAS, INC., et. ) | |
| al. ) | |
| ) | |
| Defendants. ) | |
| ) | CIVIL ACTION NO. 04-0094-CG-C |
| ST. PAUL FIRE AND MARINE ) | |
| INSURANCE COMPANY, ) | |
| ) | ORAL ARGUMENT REQUESTED |
| Counterclaim and Cross-Claim ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CANAL INSURANCE COMPANY, ) | |
| ) | |
| Counterclaim ) | |
| Defendant. ) | |

## PLAINTIFF, CANAL INSURANCE COMPANY'S, PROCEDURAL HISTORY IN SUPPORT OF ITS POSITIONS AT THE COURT'S MARCH 30, 2005 HEARING

**COMES NOW** the Plaintiff and Counterclaim Defendant, Canal Insurance Company ("Canal"), and files this, its procedural history in support of its positions at the Court's March 30, 2005 hearing.[1]

---

[1] Canal is filing this procedural history to assist the Court in resolving the issues at the March 30, 2005 hearing. As stated by Golden Peanut, U.S. Fire and St. Paul in their motions for additional time to respond to Canal's initial Motion for Summary Judgment, "[t]his declaratory judgment action is a complex coverage dispute dealing with multiple parties and multiple policies of insurance." (Doc. 58, p. 2 ¶ 1; Doc. 59, p 2 ¶ 1). Canal believes that a procedural history in this matter will assist the Court in resolving all issues in the March 30, 2005 hearing.

1.    In 2002 or 2003, Golden Peanut Company, LLC ("Golden Peanut") and Christopher Thomas, Inc. ("Thomas"), entered into a 3 year contract for the 2002-2004 crop years. (A copy of this contract is attached as **Exhibit "1"**). This is the agreement under which the haul was being made at the time of the underlying accident.

2.    On April 22, 2003, Canal issued a Basic Automobile Liability Policy to Thomas, bearing policy number 393671 (the Canal policy) with effective dates of coverage from April 22, 2003 to April 22, 2004. (A copy of this policy is attached to Canal's Amended Complaint, Doc. 42, as Exhibit "A").

3.    On November 4, 2003 an accident occurred, which is made the basis of *Virginia L. Arnold and husband, James Arnold, plaintiffs versus Christopher Thomas, Inc., incorrectly designated as Thomas Trucking, Inc., a corporation and Golden Peanut Company, LLC, incorrectly designated a Golden Peanut Company, Inc., a corporation, defendants, in the United States District Court for the Southern District of Alabama (CV-03-0819-CG-C)* (hereinafter "the underlying lawsuit"). The accident was caused when the left brake drum of Golden Peanut's trailer fell off and struck a vehicle driven by Dorothy Arnold. (Copies of the Complaint and the Amended Complaints are attached to Canal's reply brief in support of its own motion for summary judgment and response to the motions for summary judgment by U.S. Fire and Golden Peanut, Doc. 104, as Exhibits "G" through "L").

4.    On November 7, 2003, Virginia Arnold and James Arnold sued Thomas Trucking Co., Inc., and Golden Peanut Co., Inc., in the Circuit Court of Conecuh County, Alabama. (See Doc. 104, Exhibit "G"). **Jason Tillery was not named as a defendant in this complaint**. (See Doc. 104, Exhibit "G").

5. On December 12, 2003, the underlying lawsuit was removed from the Circuit Court of Conecuh County, Alabama to the United States District Court for the Southern District of Alabama (CV-03-0819-CG-C). (See Doc. 1 in the underlying lawsuit).

6. On December 18, 2003, the plaintiffs in the underlying lawsuit moved to amend their complaint to: (a) **add Jason Tillery as a defendant**; (b) add a claim for wrongful death; and (c) add a claim for willful, wanton and/or malicious conduct. (See Doc. 13 in the underlying lawsuit).

7. On December 22, 2003, the Court granted plaintiffs' motion to amend in the underlying lawsuit. (See Doc. 15 in the underlying lawsuit).

8. On January 5, 2004, the plaintiffs filed their amended and/or substituted complaint in the underlying lawsuit. (See Doc. 17 in the underlying lawsuit).

9. On January 7, 2004 attorney Tony Higgins, counsel for Golden Peanut in the underlying lawsuit, wrote to attorney Mark Newell, counsel for Thomas in the underlying lawsuit, and demanded defense and indemnity for Golden Peanut under Canal's Basic Automobile Liability Policy pursuant to a Status Summary Sheet in Canal's policy. (The letter is attached as **Exhibit "2"**).

10. On February 6, 2004, Canal's counsel wrote to attorney Higgins and demanded defense and indemnity under Golden Peanut's liability insurance policies with U.S. Fire (both its primary and excess and/or umbrellas policies), and St. Paul Fire & Marine Insurance Company ("St. Paul")(under its excess and/or umbrella policy) with respect to the underlying lawsuit for Tillery and Thomas. (The letter is attached as **Exhibit "3"**).

11. On February 14, 2004, Canal filed its Declaratory Judgment lawsuit. (Doc. 1).

12. On February 25, 2004, attorney Higgins wrote to Canal's counsel and stated that he had forwarded the letter of February 6, 2004 to U.S. Fire and St. Paul and that they would respond *"as quickly as possible"* to the demand for defense and indemnity of Thomas an Tillery. (The letter is attached as **Exhibit "4"**) (emphasis supplied).[2]

13. On March 10, 2004, the plaintiffs in the underlying lawsuit filed their second amended complaint to properly name Golden Peanut. (See Doc. 40 in the underlying lawsuit).

14. On March 15, 2004, attorney Tony Higgins filed separate answers to Canal's Declaratory Judgment lawsuit on behalf of Golden Peanut, U.S. Fire and St. Paul. (Docs 8, 9 and 10). He also filed counterclaims on behalf of Golden Peanut, U.S. Fire and St. Paul seeking coverage under Canal's policy for Golden Peanut, and cross-claims against Tillery and Thomas on behalf of U.S. Fire and St. Paul. (Docs 8, 9 and 10).

15. On March 19, 2004, Golden Peanut answered plaintiffs' first interrogatories in the underlying lawsuit. (The answers are attached as **Exhibit "5"**). In response to interrogatory number 8, Golden Peanut denied that it was a motor carrier within the meaning of the regulations of the Interstate Commerce Commission. (**Exhibit "5"**, p. 3 number 8). These interrogatories were signed under oath by Dennis Robbins on behalf of Golden Peanut. (**Exhibit "5"**, p. 7).

16. On March 22, 2004, Canal filed its answers to the counterclaims and cross-claims of U.S. Fire and St. Paul and the counterclaim of Golden Peanut. (Docs 15, 16 and 17).

17. On April 13, 2004, counsel for Canal wrote to attorney Tony Higgins and again demanded defense and indemnity in the underlying lawsuit from U.S. Fire and St. Paul on behalf of

---

[2]U.S. Fire responded on February 14, 2005, on the eve of mediation. See Below, p. 17 ¶ 83, **Exhibit "44"**. St. Paul responded on March 3, 2005. See Below, p. 17 ¶ 84, **Exhibit "45"**.

Thomas and Tillery. (The letter is attached as **Exhibit "6"**).

18. On April 19, 2004 plaintiffs' lawyer in the underlying lawsuit, William Smith, wrote to all counsel, including attorney Scott Salter, counsel for St. Paul, and requested the deposition of Jason Tillery in the underlying lawsuit "[e]ven if the defendant Jason Tillery, is desirous of taking the Fifth Amendment." (The letter is attached as **Exhibit "7"**, p. 2).

19. On April 20, 2004, attorney Salter wrote to attorney Tony Higgins, counsel for Golden Peanut, U.S. Fire and St. Paul, and Canal's counsel, and advised that any delays would increase the settlement value of the underlying case and demanded that U.S. Fire and Canal tender their limits. (Canal will produce a copy of this letter, if necessary, for an *in camera* inspection)

20. On April 21, 2004, counsel for Canal wrote to attorney Salter and requested St. Paul's position as to defense and indemnity of Thomas and Tillery in the underlying lawsuit. (The letter is attached as **Exhibit "8"**).

21. On April 22, 2004, attorney Scott Salter filed a notice of appearance on behalf of St. Paul in the Declaratory Judgment lawsuit. (Doc. 32).

22. On April 22, 2004, attorney Tony Higgins moved to withdraw as St. Paul's attorney in the Declaratory Judgment lawsuit. (Doc. 33).

23. On April 26, 2004, the report of the parties was filed with the Court. (Doc. 36). The reported stated that: "In the instant lawsuit, Canal Insurance Company ("Canal") seeks: (1) a declaration that Golden Peanut Company, LLC, is not entitled to insurance coverage under Canal's policy (including the duty to defend and/or indemnify), in the underlying lawsuit; (2) a declaration that Christopher Thomas, Inc. and Jason Tillery are entitled to insurance coverage under United States Fire Insurance Company's primary and excess policies (including the duty to defend and/or

indemnify) in the underlying lawsuit; (3) a declaration that Christopher Thomas, Inc. and Jason Tillery are entitled to insurance coverage under St. Paul Fire & Marine Insurance Company's Umbrella Excess Policy (including the duty to defend and/or indemnify) in the underlying lawsuit; (4) a declaration that United States Fire Insurance Company's primary policy is primary to Canal's policy as concerns defense and/or indemnity of Christopher Thomas, Inc., and Jason Tillery in the underlying lawsuit; and (5) any such other, further, and different or more general relief as Canal may be entitled." (Doc. 36, pp. 1-2 ¶ 1).

24. On April 27, 2004, attorney Mark Andrews, personal counsel for Thomas and Tillery, wrote to attorney Scott Salter and demanded defense and indemnity from St. Paul and U.S. Fire with respect to his clients, Thomas and Tillery. (The letter is attached as **Exhibit "9"**).[3]

25. On May 5, 2004, Canal propounded interrogatories, requests for production of documents and requests for admission on Golden Peanut, U.S. Fire and St. Paul in Canal's Declaratory Judgment action. (This discovery is attached as **Exhibits "10", "11", "12", "13", "14", "15", "16", "17"** and **"18"** respectively). It is undisputed that the other parties in the Declaratory Judgment lawsuit – Golden Peanut, U.S. Fire, St. Paul, Tillery, Thomas and/or the Estate of Arnold – **have never propounded any discovery to Canal in this lawsuit**.

26. On May 11, 2004, the Court issued its Scheduling Order in this matter. (Doc. 37). The Court ordered that the issues that were subject to discovery were those issues identified by the parties in paragraph 4 of their Rule 26(f) report. (Doc. 37, p. 1 ¶ 1).

27. On May 11, 2004, attorney William Smith noticed the deposition of the corporate

---

[3]Tillery did not make a demand for defense and indemnity to Canal until January 24, 2005. See Below, p. 15 ¶ 76.

representative of Golden Peanut. (This notice is attached as **Exhibit "19"**).

28. On May 28, 2004, Canal filed a motion to amend its complaint in the Declaratory Judgment lawsuit. (Doc. 38). In this motion, Canal specifically sought to raise its Truckman's Endorsement <u>and</u> clarify that Canal's policy was excess to all policies. (Doc. 38, p. 2 ¶ 2(a) and 2(b)).

29. On June 1, 2004, Canal provided its initial disclosures to the other parties in the Declaratory Judgment lawsuit. (Canal's initial disclosures are attached as **Exhibit "20"**). As to damages Canal stated that "Canal is unable to identify specific damages at this time, but does claim that United States Fire Insurance Company and St. Paul Fire and Marine Insurance Company owe a duty to defend and/or indemnify Christopher Thomas, Inc., and/or Jason Tillery in the underlying lawsuit and are liable for any and all damages that Christopher Thomas, Inc., and/or Jason Tillery must pay as damages in the underlying lawsuit for each and every reason specified in Canal's Declaratory Judgment Complaint and proposed Amended Complaint, as well as for attorney's fees, expenses, costs and interest to Canal for Canal's defense of Christopher Thomas, Inc., and/or Jason Tillery in the underlying lawsuit. Canal reserves the right to supplement this disclosure." (**Exhibit "20"**, pp. 3-4 ¶ 3).

30. On June 4, 2004, the Court ordered that any opposition Canal's motion to amend must be filed by June 15, 2004. (Doc. 40). Thus, the Court put the burden on any party to oppose Canal's proposed amendment. (See Doc. 40). **It is undisputed that no party ever opposed Canal's motion to amend**.

31. On June 8, 2004, Counsel for Canal wrote to counsel for Golden Peanut, U.S. Fire and St. Paul and requested their past due responses to Canal's requests for admissions, requests for

Page 7 of 18

production of documents and interrogatories. (The letter is attached as **Exhibit "21"**).

32. On June 23, 2004, Canal filed its First Amended Complaint, which raised Canal's Truckman's Endorsement and alleged that Canal's policy was excess to all policies. (Doc. 42, pp. 7-8, p. 9 ¶ 25, p. 11 ¶ 6(4)).

33. On July 1, 2004, the plaintiffs in the underlying lawsuit filed their third amended complaint to name WDL. (See Doc. 48 in the underlying lawsuit). The Court struck this amendment, and the plaintiffs moved to amend to add WDL. (See Docs 49 and 50 in the underlying lawsuit).

34. Golden Peanut and U.S. Fire did not move to strike Canal's First Amended Complaint in the Declaratory Judgment lawsuit; instead, on July 12, 2004, they filed separate answers. (Docs 47 and 48).

35. On July 16, 2004, the deadline to amend pleadings in the Declaratory Judgment case expired. (See Doc. 37, p. 2 ¶ 4).

36. On July 28, 2004, Thomas filed an answer to plaintiffs' third amended complaint in the underlying lawsuit. (Doc. 56 in the underlying lawsuit).

37. St. Paul did not move to strike Canal's First Amended Complaint in the Declaratory Judgment lawsuit; instead, on August 16, 2004, St. Paul filed an answer. (Docs 47).

38. On August 16, 2004, Thomas and Tillery filed answers to Canal's First Amended Complaint in the Declaratory Judgment lawsuit. (Docs 48 and 49).

39. On August 20, 2004, Counsel for Canal wrote to counsel for Golden Peanut and U.S. Fire and counsel for St. Paul and requested their responses to past-due discovery if the deadlines in the discovery and summary judgment deadlines in the case were not moved. (This letter is attached

as **Exhibit "22"**). Due to requests from the other parties, Canal had previously agreed not to force Golden Peanut, U.S. Fire and/or St. Paul to respond to Canal's discovery requests.[4]

40. On August 20, 2004, the Court entered an Order extending the discovery deadline until December 17, 2004 and the dispositive motion deadline until January 4, 2005. (Doc. 50).

41. On October 28, 2004, Canal filed its motion for summary judgment and supporting brief in the Declaratory Judgment lawsuit. (Docs 55 and 56).

42. On November 3, 2004, attorney Scott Salter wrote to counsel for Canal and requested Canal to reconsider its position that Canal's policy was excess to St. Paul's policy. (The letter is attached as **Exhibit "24"**).

43. On November 5, 2004, counsel for Canal responded to St. Paul and stated that Canal had not taken a position in its brief in support of its motion for summary judgment concerning whether St. Paul provided primary coverage for Thomas and Tillery. (The letter is attached as **Exhibit "25"**). Canal agreed that St. Paul's policy was not primary to Canal's policy. (**Exhibit "25"**). However, Canal did not state – one way or another – that St. Paul's policy was excess to Canal's policy. (See **Exhibit "25"**). **Also, it is undisputed that at the time this letter was written, U.S. Fire had <u>not</u> tendered the limits of its Commercial Auto Policy with respect to the underlying lawsuit.**[5]

---

[4]In fact, due to these requests, Canal filed its motion for summary judgment before it even received responses to its discovery in this matter. (a November 1, 2004 letter which confirms that Canal had not yet received its discovery from U.S. Fire, Golden Peanut and St. Paul is attached as **Exhibit "23"**).

[5]In fact, U.S. Fire's tender did not occur until January 28, 2005. See Below, p. 15 ¶ 77, **Exhibit "41"**. Additionally, Tillery had not yet made a demand on Canal for coverage. Tillery did not make his demand until January 24, 2005. See Below, p. 15 ¶ 76. Additionally, neither U.S. Fire nor St. Paul had yet admitted that Thomas and Tillery were their insureds. See Below,

Page 9 of 18

44. On November 8, 2004 and November 9, 2004 respectively, U.S. Fire and Golden Peanut and then St. Paul moved to extend the deadline to respond to Canal's motion for summary judgment on the grounds that the case "is a complex coverage dispute dealing with multiple parties and multiple policies of insurance." (Doc. 58, p. 2 ¶ 1; Doc. 59, p 2 ¶ 1).

45. On November 11, 2004, Jason Tillery testified in the underlying lawsuit. It is undisputed that Canal's attorneys were not allowed to ask questions or make objections during this deposition.

46. On November 11, 2004, Dennis Robbins testified in the underlying lawsuit. It is undisputed that Canal's attorneys were not allowed to ask questions or make objections during this deposition. Robbins testified that:

    a. Golden Peanut was not a motor carrier; and

    b. Golden Peanut was not, and never has been, in the business of trucking.

(Pertinent portions of Robbins's testimony in the underlying lawsuit are attached as **Exhibit "26"**, p. 42 lines 13-15, p. 64 lines 20-23, p. 69 lines 9-5, p. 72, lines 12-14).

47. On November 18, 2004, Canal noticed the deposition of Dennis Robbins in the Declaratory Judgment lawsuit. (The Notice attached as **Exhibit "27"**).

48. On November 18, 2004, counsel for Canal wrote to counsel for U.S. Fire and requested dates for Robbins's deposition in the Declaratory Judgment lawsuit. (The letter is attached as **Exhibit "28"**).

49. On November 24, 2004, Dennis Robbins signed his affidavit in support of Golden Peanut's and U.S. Fire's response in opposition to Canal's motion for summary judgment and their

---

p. 11 ¶¶ 51-52, Doc. 61, pp. 2-3 and Doc. 62, pp. 33-34.

own motion for summary judgment. (This affidavit is attached as **Exhibit "29"**). Robbins testified, in part, that "[t]he agreement between Golden Peanut and Christopher Thomas, Inc., was an agreement for services, not a <u>lease, contract of hire, bailment, rental agreement, or any similar contract or agreement</u> pertaining to any specific equipment or vehicles". (**Exhibit "29"**, p. 2 ¶ 3).

50. On November 24, 2004 attorney Tony Higgins advised that Dennis Robbins was available to testify on December 6, 2004 in the Declaratory Judgment lawsuit. (The letter is attached as **Exhibit "30"**).

51. On November 29, 2004 St. Paul filed its response to Canal's motion for summary judgment and stated that "**<u>Christopher Thomas, Inc., and Jason Tillery also qualify as insureds under the St. Paul excess policy for those claims arising from their use of the Golden Peanut trailer</u>**." (Doc. 61, pp. 2-3) (emphasis supplied).

52. On November 29, 2004 Golden Peanut and U.S. Fire filed a response in opposition to Canal's motion for summary judgment. (Doc. 62). **<u>U.S. Fire admitted that Thomas and Tillery were insureds under both its Commercial Auto and Commercial Excess policies</u>**. (Doc. 62, pp. 33-34). Their brief also referenced and relied on the affidavit testimony of Dennis Robbins. (Doc. 62, pp. 4-6 ¶ 3, pp. 24-26; p. 32; and p. 42).

53. On November 29, 2004 Golden Peanut and U.S. Fire also filed their own motion for summary judgment. (Doc. 63).

54. On November 30, 2004 Tony Higgins filed a motion for protective order on behalf of Golden Peanut to prevent Canal from taking Dennis Robbins's deposition. (Doc. 65).

55. On November 30, 2004 Golden Peanut responded to Canal's requests for admissions. (The responses are attached as **Exhibit "31"**). In response to Canal's request that Golden Peanut

"Admit or deny ... 8. That Golden Peanut is a "motor carrier" as defined by 49 C.F.R. § 387.5." Golden refused to answer this request, stating "*Objection. Defense counsel objects to this request on the grounds that it seeks information which is irrelevant and immaterial to the declaratory judgment proceeding. Further, it is not reasonably calculated to lead to the discovery of admissible evidence with respect to the declaratory judgment proceeding.*" (**Exhibit "31"**, ¶ 8) (emphasis supplied).

56. On December 2, 2004, Canal moved to strike portions of the affidavit of Dennis Robbins in the Declaratory Judgment lawsuit. (Doc. 67). Golden Peanut and U.S. Fire opposed this motion. (Doc. 75).

57. On December 3, 2004, Canal then requested additional time to respond and brief the summary judgment issues in this case and an extension of the discovery deadline. (Doc. 68). The Court granted this motion on December 10, 2004 and gave Canal until January 7, 2005 to complete discovery (solely to take Dennis Robbins's deposition) and until January 14, 2005 to file a reply brief in support of Canal's motion for summary judgment and to oppose defendants' motion for summary judgment. (Doc. 72).

58. On December 14, 2004, Thomas and Tillery moved for summary judgment. (Doc. 74).

59. On December 16, 2004 attorney Carol Ann Smith filed her notice of appearance on behalf of U.S. Fire. (Doc. 77).

60. On December 17, 2004 attorney Tony Higgins filed a motion to withdraw from the representation of U.S. Fire. (Doc. 78).

61. On December 20, 2004 the Court granted attorney Higgins motion to withdraw from the representation of U.S. Fire. (Doc. 80).

62. On December 23, 2004 attorney Carol Ann Smith filed her notice of appearance on behalf of Golden Peanut. (Doc. 81). On the same day, she wrote to Canal's counsel and advised that she was out of the country until January 4, 2005 [three (3) days before the end of discovery] and that she would put Robbins up for a deposition upon her return. (This letter is attached as **Exhibit "32"**).

63. On December 23, 2004, Joe Campbell, the Eastern Region Procurement Manager for Golden Peanut and Dennis Robbins's superior, testified by affidavit in the underlying lawsuit that Dennis Robbins was the most knowledgeable person to testify "regarding the compliance of Golden Peanut with any state or federal rules or regulation concerning safety and/or operation of the particular trailer involved in the accident made the basis of this suit." (This affidavit is attached as **Exhibit "33"**).

64. On December 27, 2004 attorney Tony Higgins filed a motion to withdraw from the representation of Golden Peanut. (Doc. 82). Canal re-noticed the deposition of Dennis Robbins on the same day. (This re-notice is attached as **Exhibit "34"**).

65. On December 27, 2004 counsel for Canal wrote to attorney Carol Ann Smith and advised that if the deposition of Dennis Robbins could not take place before the discovery deadline, Canal would move for a default. (This letter is attached as **Exhibit "35"**).

66. On December 27, 2004, Canal filed a motion for an emergency hearing because it was concerned that it could not secure the deposition of Dennis Robbins before the expiration of the discovery deadline. (Doc. 83).

67. On December 29, 2004 the Court granted attorney Higgins motion to withdraw from the representation of Golden Peanut. (Doc. 84).

68. On December 29, 2004 the Court granted Canal's motion for an emergency hearing in part. (Doc. 85).

69. On January 4, 2005, St. Paul filed a response to Thomas and Tillery's motion for summary judgment and also moved to deny coverage for them for the underlying lawsuit. (Doc. 88).

70. On January 5, 2005, St. Paul's counsel objected to the deposition of Dennis Robbins taking place in the Declaratory Judgment lawsuit. (This letter is attached as **Exhibit "36"**).

71. On January 5, 2005, Golden Peanut employee Sydney Owens testified in the underlying case that Golden Peanut is not a common carrier. (Pertinent portions of Owens's deposition are attached as **Exhibit "37"**, p. 27 lines 13-22). A Motor Carrier Snapshot of Golden Peanut was introduced at Mr. Owens's deposition by counsel for plaintiffs in the underlying lawsuit. (**Exhibit "37"**, p. 29 lines 6-15; The snapshot is attached as **Exhibit "38"**). It is undisputed that Canal's attorneys were not allowed to ask questions or make objections during this deposition. This prevented Canal from expanding on the motor carrier development at this deposition.

72. On January 5, 2005 Canal's attorneys wrote to attorneys Carol Ann Smith and Scott Salter and again requested dates for the deposition of Dennis Robbins. (This letter is attached as **Exhibit "39"**).

73. On January 7, 2005 Christopher Thomas testified in the underlying lawsuit. Once again, it is undisputed that Canal's attorneys were not allowed to ask questions or make objections during this deposition.

74. On January 17, 2005, Dr. Tom Talbot testified in the underlying lawsuit as Plaintiff's liability expert. Contrary to Mr. Robbins's testimony that Golden Peanut was not a motor carrier, Dr. Talbot testified that Golden Peanut violated the Federal Motor Carrier Safety Regulations. (Pertinent portions of Dr. Talbot's testimony are attached as **Exhibit "40"**, p. 17, lines 19-23, p. 18, lines 1-23).

75. On January 21, 2005 Dennis Robbins finally testified in the Declaratory Judgment case. Pertinent portions of his deposition are set forth in exhaustive detail in Canal's reply brief in support of its own motion for summary judgment and response to the motions for summary judgment by U.S. Fire and Golden Peanut. (Doc. 104). In addition, Golden Peanut's and U.S. Fire's counsel filed this deposition into Court on January 28, 2005. (Doc. 28).

76. On January 24, 2005 counsel for Thomas and Tillery, Mark Andrews, demanded defense and indemnity from Canal on behalf of Thomas and Tillery with respect to the underlying lawsuit. (Canal will produce a copy of this letter, if necessary, for an *in camera* inspection). **This is the first time that a demand for defense and indemnity has ever been made on Canal by Tillery**.

77. On January 28, 2005 counsel for U.S. Fire, Carol Ann Smith, made a tender of U.S. Fire's $1,000,000.00 policy, which underlies St. Paul's policy, in the underlying matter on behalf of Golden Peanut, Thomas and Tillery. (This letter is attached as **Exhibit "41"**).

78. Due to U.S. Fire's tender, St. Paul's policy was triggered and "dropped down" pursuant to its terms on January 28, 2005.[6] It is undisputed that St. Paul's policy does not refer to

---

[6] The St. Paul policy at issue here states:

**What this Agreement Covers**

Page 15 of 18

Canal's policy in the Schedule of Basic Insurance.

79.     On January 28, 2005 U.S. Fire and Golden Peanut moved to mediate the Declaratory Judgment case. (Doc. 94). The Court granted this motion on February 4, 2005. (Doc. 102).

80.     On February 4, 2005 Canal files its reply brief in support of its own motion for summary judgment <u>and</u> response to the motions for summary judgment by U.S. Fire and Golden Peanut, Doc. 104). Canal asserted that its Truckman's Endorsement precludes coverage for Jason Tillery and that the Truckman's Endorsement makes Canal excess. (Doc. 104). In addition, on February 4, 2005 Canal filed its reply brief to St. Paul's response to Canal's brief and took the position that Canal's policy is now excess to St. Paul's policy <u>because</u> of the tender made by U.S. Fire. (Doc. 105).

---

**Coverage A: Excess Liability**

We will pay amounts any "protected person" [Golden, Thomas, and Tillery] is legally required to pay as damages that

   *    are covered by Coverage A of this agreement; and

   *    would have been covered by **<u>your</u>** [Golden's Peanut's] "Basic Insurance" but aren't only because they exceed the payment of the applicable limit of coverage stated in your (Golden's) "Basic Insurance."

If the applicable limit of coverage stated in your [Golden Peanut's] "Basic Insurance" is reduced due to payment of the amounts that are subject to that limit, we will pay damages covered by Coverage A that exceed the remaining limit.

(St. Paul's policy is attached to Canal's Motion for Summary judgment, Doc. 55, as Exhibit "G") (Emphasis supplied).

81. On February 10, 2005, Canal again tendered the defense of Thomas and Tillery to U.S. Fire and St. Paul. (This letter is attached as **Exhibit "42"**).

82 On February 14, 2005, U.S. Fire made an unqualified tender U.S. Fire's $1,000,000.00 policy, which underlies St. Paul's policy, in the underlying matter on behalf of Golden Peanut, Thomas and Tillery, on the eve of mediation. (This letter is attached as **Exhibit "43"**).

83. On February 14, 2005, counsel for U.S. Fire wrote to counsel for Canal and denied defense to Thomas and Tillery in the underlying lawsuit. (This letter is attached as **Exhibit "44"**).

84. On March 3, 2005, St. Paul's counsel wrote to counsel for Canal and denied defense to Thomas and Tillery in the underlying lawsuit. (This letter is attached as **Exhibit "45"**).

Respectfully Submitted,

S/ William E. Pipkin, Jr.
William E. Pipkin, Jr.

S/ K. Donald Simms
K. Donald Simms (Fed ID: SIMMK9801)

S/ Joseph E. B. Stewart
Joseph E. B. Stewart (Fed ID: STEWJ6903)
Attorneys for Plaintiff
Canal Insurance Company

**OF COUNSEL**:
AUSTILL, LEWIS, SIMMS,
   PIPKIN & MOORE, P.C.
P.O. Box 2885
Mobile, Alabama 36652
TELEPHONE: (251) 431-9006
FACSIMILE:    (251) 431-0555

AUSTILL, LEWIS & SIMMS, P.C.
P. O. Box 11927
Birmingham, AL 35202-1927
Telephone:   (205) 870-3767
Facsimile:   (205) 870-3768

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of March, 2005. I electronically filed the foregoing with the Clerk of Court using the CM/EMF system which will send notification of such filing to the following:

Nicole L. Judge, Esq.
SMITH & ALSPAUGH, P.C.
Suite 1100 Financial Center
505 20th Street North
Birmingham, Alabama 35203

Scott M. Salter, Esq.
STARNES & ATCHISON
P.O. Box 598512
Birmingham, AL 35259

S. Mark Andrews, Esq.
MORRIS, CARY, ANDREWS
& TALMADGE, LLC
PO Box 1649
Dothan, Alabama 36302

Carol Ann Smith, Esq.
SMITH & ELY, LLP
2000A SouthBridge Pkwy
Suite 405
Birmingham, Alabama 35209

S/ K. Donald Simms
OF COUNSEL